Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Armen Bislamian. Your Honor, the district court plainly aired in this case wanted to impose supervised release conditions relating to Mr. Bislamian's use of the Internet, even though as the government concedes there's nothing in the record indicating that his offense involved use of the Internet. Are there two conditions being contested? The one having to do with use of the Internet and also the nature of the objects? We've contested collectively the three computer restrictions that the probation office recommended, so conditions 11, 12, and 13. The reason for that is condition 11 actually defines computers and computer-related devices to include devices that connect to the Internet service providers, his email accounts, his passwords, so even though that's a disclosure condition, it in fact does relate to specifically his use of the Internet. And then conditions 12 is the computer search condition, which of course includes electronic games and all the other computer-related devices that were defined, and computer 13 is the computer monitoring condition. If there were some evidence, anything, that he had used the Internet to assist him in the committing of this crime, would you be objecting to this to this provision? We would. It would be certainly a more difficult argument to make. It would be a closer question, but there needs to be, I would submit, something that indicates that the Internet actually played some significant role. It's clear that he was using computer devices, hard drives and things like that, for storage of data. Correct. Your objection is that there isn't any direct evidence that he actually accessed the Internet to do this. That's correct. What about the finding of the zip codes, for example, searching for people? I mean, in the old days, you used to have to go down to the post office and pull up a great big book that listed streets. I don't even know if the post office even has that book anymore. It's not much of a stretch to say, look, it doesn't take anything at all to go find zip codes on the Internet. Well, it's certainly easy to find a lot of stuff on the Internet, Your Honor. With respect to the zip codes, it's not clear whether or not those were obtained through an independent search of the Internet or if those were obtained as part of the skimming process, because if the individuals who put in their credit card to the skimming device into the gas pump, and then it required them to enter their zip code, then... The billing code. Correct. Then that would provide them with that information, and it would have nothing to do with the Internet. This is his second similar kind of offense. Why, in that case, wouldn't it be useful to preclude him from using the Internet, which might facilitate this in the future, to take away that Well, Your Honor, his other crime that you reference actually was his using a credit card to purchase items. There's nothing that indicated that he, in fact, used a skimmer, that he created that. He simply used a credit card. Am I correct that these restrictions don't preclude the use of the Internet? It's a disclosure only. So he has unrestricted access to the Internet. He simply has to tell the probation officer. That's correct. He is able to use the Internet, but as part of the computer monitoring condition, for example, and the search condition, it would permit the probation officer to presumably review all of his emails and get his entire web history, see what newspapers he's reading. Not just disclosure. Disclosure and monitoring. Search, essentially. Right. There's the monitoring condition. Right. Which would, and again, it's not defined here, other than he has to comply with the computer monitoring program. But presumably, and we know this from various cases, that what was being targeted here was his access to the Internet. So might the answer be different with regard to disclosure on the one hand and monitoring on the other, because at least disclosure of some things. He did use computers to some degree in his crime. He certainly did. And presumably in the modern day, he could also therefore use an iPad or a cell phone for the same purpose. Well, that's correct. And obviously, as technology evolves, I mean, the Internet is... On a game would be hard. But a cell phone or an iPad or another PDA would provide the service that he was using it for the first time. That's right. Well, I mean, all of these are different ways to access the Internet. And so the basic question is, is it appropriate to have... Oh, but, but aside from accessing the Internet, I understand your contention that he didn't use the Internet and there shouldn't be any restrictions dealing with the access to the Internet. But he did use a computer. That's correct. And therefore, is there anything wrong with the provision that he disclosed his possession or use of a computer? No, Your Honor. We wouldn't quibble with the disclosure requirement with respect to computers and computer-related devices as a general matter. The issue then becomes, as it's defined in these conditions, equipment that specifically is used to connect to the Internet. I see. So you're not objecting to the disclosure requirement with regard to just the existence of these... The existence of computers, the storage devices, the flash drives, the things that were actually involved in this particular crime. And cell phones and iPads, I presume, because you could do exactly the same thing with them. Well, Your Honor, again, this is where it becomes, is this an issue of... His use of the computer was simply to, and it depends on whether you define it skimming device as a computer. He used a skimming device and then downloaded information from the skimming device onto a hard drive or to a flash drive. So there's nothing there that indicates any use of the Internet or... Now, are there various ways that one can... Are there various other things that one can use a computer for? Of course. But here, if one goes through the government provided, where all this information was found, it's sealed excerpts of references 255 to 265, actually lists where all of this information was. And it's essentially just a list of flash drives, CDs, and the skimming device. That's where this information was stored. So I had a question too that relates to, if somebody's getting sentenced and they have, say, a three year term of imprisonment, then they're gonna come out and we're talking about trying to impose the supervisory list conditions three years down the road. How do you ensure that you broadly capture technology that you don't even know exists at the time you're sentencing a person? Well, and this decision in Kinzon addressed that in some ways. It is difficult to predict what technology will be down the road. Of course, the law requires that the least restrictive condition be imposed, and so the probation office, the government, can always come back and say, once he's released, well, we're aware of these technological advances. And in fact, under Kinzon, probation officers are obligated to pay attention to any technological advances and make recommendations as to what would be appropriate at that time. We've seen a number of computer related restrictions in reports, and I assume that you've seen a number. I haven't done a side by side comparison, but these restrictions look like they're pretty standard stuff. There are certain basic language that the probation office... We've got a sex offender. This is sort of the same language that's used. This is not something made up by the district court. I haven't sort of gone beyond what we've applied to other people who have used computers in committing their crimes. This is the standard language that at least the probation office in the Central District of California typically uses. But typically for what? Your problem is typically for what crime? Because it's typical for a child pornography case because they're using the internet. Correct. So these are pretty standard conditions, but we're not dealing with a sex offense context. We're dealing with a very different situation. Unless the court has additional questions, I'll reserve the balance. Thank you very much. Thank you. Good morning. May it please the court. Christina Shea for the United States of America. This case is about whether a district court plainly erred in imposing disclosure, search, and monitoring conditions on a computer where that defendant used computers and it can be gleaned from the record, the internet, in committing his crimes. A, how could it be gleaned? And B, was it found by anybody? Did anybody find that as a fact? Your Honor, it can be gleaned from the record in a couple of ways. First is the zip codes and credit cards, as stated in the PSR, at defendant's credit card manufacturing facility, essentially, outside of his home. Defense counsel... What did they find? They found credit profiles, which are, for example, your name, Social Security number, credit card, your personal identifying information. And this was found... This was printed information or this was found on a hard drive? I believe this was handwritten information and or printed. I don't know that that level of specificity is in the PSR. That is different from information that can be taken from a skimming device. And I think it's important, the crime here was not as simple as defendant makes it to be. Indeed, the PSR, the probation office found it to be sophisticated and quite involved. Defendant personally made and then installed these skimming devices at gas station pumps. He then took those skimming devices, connected it to his computer, pulled the data off the computer, used computer software, made cards... What data off the computer? He took the data from the skimming devices, connected to his... Skimming device gets connected to the computer. That data gets pulled off the skimming device into the computer, and then he connects a re encoding device to the computer, re encoding software on the computer, and that software helps him make fake credit cards. Now, to use those fake credit cards, and the district court again has his criminal history before him, you can use those fake credit cards at gas station pumps where you would need someone's zip code. You could also use those fake credit cards in order to get new credit cards, in order to call that credit card company, say, this is my social security number, this is my name, this is my personal information. But what software was he using? I don't know the name of the software. That software just permits him to re encode the data that he... Is it software that he could have made up or is it software that he acquired someplace else? This would be outside the record, Your Honor, but it would be... My experience in these cases would be that it's software that you either can download from online or you can purchase somewhere. But in this day and age, more likely download from online, and that really goes to this court's decision in bets. The district court does not close the barn door just on substantially identical crimes. Therefore, the fact that he may not have specifically used the internet in this case, which the government would submit that he most likely did, but even if he had not, the district court needs to look forward to how does this defendant commit this crime again in the future? Is it reasonably related to preventing this defendant from committing this crime in the future? And the government would submit that it does. In the future, this software would be downloaded from online. In the future, when the defendant is released three years from now, this data is data that you find online. And this court's decision in Bexar, I believe is instructive. In Bexar, it's a defendant who ran a small pawn shop. He sold some guns and he kept that information in paper records. Indeed, the dissent in Bexar notes that the FBI found no digital devices having anything to do with his business when they did the search warrant on that pawn shop. But Bexar also said, so long as the district court makes a factual finding establishing some nexus between computer use and one of the goals, etc. Was there such a finding there with regard to internet access? Not specifically with respect to internet access. But that's what he's objecting to. Well, Your Honor, Bexar was before the court at an abusive discretion standard. In Bexar, the defendant objected below to that. And so this court has to review their abusive discretion. In this case, it's a plain error standard where if the evidence can be gleaned from the record and that's the court's decision in Watson, then this court may affirm. It didn't occur to the defendants to object. It did not, Your Honor, even though these routinely applied. And that is not limited to sex offender cases, Your Honor. And that's this court's decision in Hayes, which had a felon in possession defendant who had computer monitoring conditions because he used his cell phone to text some threatening messages to his ex wife. This court in Hayes affirmed in an unpublished opinion, because these do not limit the digital devices to cell phones, they impose computer monitoring conditions. And indeed, computer monitoring conditions that were negotiated between the U.S. Attorney's Office, the Federal Public Defender's Office, and the Probation Office. These are standard conditions that the district court knows about, approves of, and imposes routinely in these cases. The problem is that your eyes glaze over at that point, right? If you see these conditions in a run of cases, the question is, what is the connection to this particular case? I mean, suppose they decided to, I can't think of a good hypothetical, but at any event, the requirement that there be some connection articulated seems to be the core of these cases before one can impose the conditions. Well, Your Honor, I would again state that that case was on a, BEAR was on an abuse of discretion standard, and we are on plain review here. In addition, the district court did make... Okay, fine. So, but the question is, plain error is plain error as to whether there was a violation of a requirement. And if the requirement is that you have to have an articulated nexus, then the question is whether the error is plain, right? Well, Your Honor, the question is whether or not the condition imposed was reasonably related to preventing this defendant to a sentencing goal, and in this case, preventing recidivism and protecting the public. The district court made a number of very specific findings in this case about defendants' potential for recidivism, about the seriousness of defendant's crime. The PSR also indicates reasons, and the recommendation letter indicates reasons for imposing these conditions. Looking forward, this district court judge, who is a very... You didn't understand why he was imposing the condition, did you? I'm sorry, Your Honor, I didn't... Did the district court ever articulate why it was imposing the condition? The district court adopted the findings in the recommendation letter, Your Honor. The answer is no. Your Honor, I believe that the district court is entitled to adopt findings in the recommendation letter and make it part of the sentence. Well, I understand that, but you said that the district court carefully went over this, and it didn't. Your Honor, the district court carefully went over the defendant's potential for recidivism and the seriousness of defendant's crime, and the fact that the crimes create a lot of economic harm to the community and the societal interest in protecting the public from future crimes of this defendant. It imposed these conditions as reasonably related to those... Were these conditions proffered to the defense before the hearing? They were, Your Honor. Okay. Were there any written objections? There were a number of written objections by the defense counsel, retained defense counsel, in this case, that had nothing to do with those three conditions. They all stipulated on record when the judge said, Yes, Your Honor. Is everybody okay with the conditions? No objection, correct? Yes, Your Honor, and I would stress that this district court judge is very thorough. He is not a district court judge who would just let things through and pass, just have his eyes glazed over in these cases. And I think it's a bit of a red herring that the crime-involved internet use is not a requirement for the imposition of computer monitoring conditions. That is not actually the court's holding in sales. That's a footnote. This court recognizes that in a 2015 decision in Bayer. That footnote explains that the requirement that internet use be related to the crime of conviction was part of the decision of the condition that banned internet use altogether. Now, there is no such condition in this case. The district court never imposes a condition banning internet use, banning computer use without prior approval by the probation office. There is a mere disclosure condition that this court has clearly held affects no real rights. There is a search condition that after Bayer, this court says that post Samson, the Supreme Court's decision in Samson, there cannot be a reasonable objection to a search condition that includes computers. And then there is a computer monitoring condition. And that computer monitoring condition does not require, as this court found in Hayes and as this court cited with approval in Bayer, does not actually require that the defendant have used the internet in committing his crime. What do you understand computer monitoring to mean if it's not a search? What is it? Your Honor, computer monitoring, there are conditions that the probation office sets out for its computer monitoring program. Those conditions change over time. And that's part of why the issue... I understand, but I don't... Okay, give me an example. What does it mean? It means I actually have the computer monitoring conditions from the probation office as they stand right here. They would be outside the record because they were not submitted by the defendant. Just give me an idea of what monitoring means if it doesn't mean disclosing and it doesn't mean searching. What does it mean? There are... It allows the... It essentially packages the information in a way that's easier for the probation office to view. So it sends weekly reports to the probation office about internet use. There is some device that is put on the computer that sends information to the probation office. There is software, yes, Your Honor, that is installed on... I had no idea that that's what computer monitoring meant. That's why I was asking you. So how is it different from a search? That is an interesting question. I mean, they could... We could... If we're allowed... If the government is allowed under bets to go search the defendant any time the government feels like it, and that includes the computers, which is the court's decision in bets, one can wonder why computer monitoring would not be also included in that. Computer monitoring is more frequent than the government could muster up the resources to go search. And I think that would be one practical difference between the two. For example, there are differences between search warrant and wire requirements, for example. But in this case, computer monitoring, there's no indication that it's unnecessarily intrusive given that the defendant's crime looking forward would use the internet, and the district court would not have plainly erred in making that determination. Okay, your time is up. Thank you, Your Honor. Yes, Your Honor. Thank you. Mr. Libby, before you start, I hope you'll have enough time to make your points. What is it you want this court to do? What I'd like this court to do, Your Honor, is remand this to the district court to reconsider imposition of the conditions. And if the district court comes back and says, there's an excess, he used a computer, that's enough, and then we'd be done? No, then it depends on, obviously, the findings the court makes, and the justification given, and whether that would be sufficient to justify this condition. But if the district court said, for example, it's pretty clear he must have used the internet to do this, or it's clear enough, or it's at least more probable than not that he used the, or likely, or he could have. What argument would you have in response to that? That there's certainly nothing that the government, well, of course, the government... That the finding is clear error? Well, if the government, if it goes back for resentencing, the government has the burden of establishing the necessity of the condition, and has produced evidence justifying the need, in this case, for restrictions on internet use. And if I could... What about, do you agree that the search condition would include searching the computer? A search condition, as written here, includes searching the computer. Computer monitoring... You're not challenging that as such? Beg your pardon? You're not challenging that as such? We're not... We're not challenging... The search condition. Well, I certainly concede that under Betz and Baird, that's difficult. All right. So then what is the difference between that and the monitoring? So the difference between that and monitoring, computer monitoring is essentially 24-hour surveillance. So it's not a probation officer goes and takes a computer... That's just not an efficient search. Is that right? That's right. I mean, it's the monitoring there essentially maintains a view of everything that happens on the computer. And the probation office doesn't, has not shared with us the particular program that they use. My understanding is the contractor that they use, it involves  happening on the computer. So everything that someone is doing on the computer, whether the defendant or anyone else in the home who's using the computer, all of that is made available to the probation office. But this is the thing. Presumably, they could do that with respect to, in this case, getting information about using the computer not as an internet device, but just as a computer. Well, that's right. And obviously the concern here is that Mr. Bizlamian used the computer to maintain this skimming information. But what I'm saying is that therefore the monitoring, at least to a degree, is connected to the crime, right? Well, the computer monitoring is internet monitoring. It's not just monitoring. But it's not only internet monitoring. That's correct, which is why some would say, so what's the difference between that and the search condition? And that's where I think it's used differently. The search condition allows a probation officer to go in and actually look at what someone has downloaded onto their hard drive, which is what would be relevant in this situation. But it would also allow, I presume, if you did it forensically, to know if you're accessing the internet. Well, that would certainly be able to make that determination. Right. But of course, our position is... So the problem with the search and the monitoring is the same, or the non-problem, depending how you look at it, which is sort of an overkill. In other words, what you're entitled to look for, you would get, but you would also get other stuff. But that's true in both... But you'd also get internet stuff, and that's true in both instances. Yes, but more so with the monitoring, obviously. And it's more in-depth. It's real-time. And essentially, as I said, it's 24-hour surveillance of anything one does on the internet, which brings in... Sales involve a monitoring or search condition or a ban. The actual condition in sales was... It was a ban, Your Honor. So is there any case dealing with not with a ban, but with something like, what's a little search for a big search, and when some sort of search is valid? Well, what we have is... Well, we have Barsoomian, which is a case from this court involving plain error, and it said that computer restrictions, which encompass the internet, for someone convicted of using a skimming device... What kind of restriction? Beg your pardon? It was prohibited access unless it was pre-approved, as I understood it. That's correct. And it was... But the concern was it was unclear whether the defendant, in fact, had actually used the computer, and therefore, it would have been overbroad. But there's no prohibition on access for your client. It's a disclosure and monitoring. That's correct. And we cited to the Burroughs decision, which is a DC circuit decision, which relied on Barsoomian, that, in fact, found plain error, struck computer restrictions, including computer monitoring... But only? It was a computer search condition. It was computer monitoring. The conditions were monitoring of computer use and requiring the defendant to pay for it, requiring the defendant to keep a daily log of his internet activity unrelated to his employment. And the DC circuit struck that condition on plain error, saying that was impermissibly overbroad. That involved... The crime was sexual abuse of a child, but it was undisputed the internet played no role in that. Did the computer play a role? It did not. All right. Well, that's the difference here. I mean, the problem is that you're making a very fine-cut argument because you're saying they can search and they can monitor, but not for the internet. Well, yes, Your Honor, because it's supposed to be a narrowly tailored condition. The law requires that conditions be narrowly tailored. Why is it the nature of the crime suggests that even if he didn't use the internet, which is highly unlikely, that if he were to return to try to do this again, that it's more likely than not that he would use the internet in the future. It's clear that the internet would facilitate, it would speed up his process for looking for names, credit card addresses, billing information, and so forth. Your Honor, all they need to do is, if it's the same crime, is determine based on looking at the computer hard drive whether or not he is accessing and downloading this information. All right. Your time is way up. So thank you very much, both of you. Thank you, Your Honor. It just got more interesting as it went on. The case of United States v. Bislamian is submitted, and we'll go to Garcia v. Asuncion.
judges: Berzon, Bybee, Gleason